JOSEPH KOHN, APPELLANT, v. JOSEPH M. KOEHLER, RESPONDENT.

*What scheme amounts to a lottery—1 R. S., 665, § 22—1 R. S., 667, § 32— when double the amount paid for a lottery ticket may be recovered—international comity does not compel this State to allow lottery tickets issued by a foreign government to be sold within its limits.*

The plaintiff purchased of the defendant, in this State, an instrument called an Austrian Government Bond, by which that government promised to pay to the holder thereof a fixed sum of money, therein named, with interest thereon at the rate of five per cent., together with an additional premium of twenty per cent., and also agreed, in case the number of the bond should be drawn as one of the prize numbers, in drawings to be held as prescribed in the said bond, that then the holder thereof should receive an additional sum of money as a prize or bonus.

*Held,* that the scheme proposed by the Austrian government was a lottery, within the meaning of the statute (1 R. S., 665, § 22) prohibiting all lotteries in this State.

That the sale of the said bond was the sale of an interest or ticket in a lottery, within the meaning of section 32 of 1 R. S., 667, and that the plaintiff was entitled to recover thereunder, double the amount he had paid to the defendant on the purchase thereof.

That his right so to do was not affected by the fact that the bond was issued by a foreign government.

That the fact that the statute virtually deprived the Austrian Government of the privilege of disposing of its bonds in this market, did not violate the international comity existing between the United States and the Austrian Government, or render the statute inoperative and void.

APPEAL from a judgment in favor of the defendant, entered on the report of a referee.

*Herbert T. Ketcham* and *Leo Goldmark,* for the appellant.

*Sigismund Kaufmann,* for the respondent.

DAVIS, P. J.:

This action is brought upon section 32 of article 4 of title 8 of part 1 of chapter 20 of the Revised Statutes (2 R. S., 6 ed., 923), which is in these words: "Any person who shall purchase any share, interest, ticket, certificate of any share or interest or part of a ticket, or any paper or instrument purporting to be a ticket or share or interest in any ticket, or purporting to be a certificate of any share or interest in any ticket or in any portion of any illegal lottery, may sue for and recover double the sum of money, and double the value of any goods or things in action which he may have paid or delivered in consideration of such purchase, with double costs of suit."

The plaintiff paid to the defendant the sum of $72 for an instrument called an Austrian Government Bond. The bond provides that the Austrian government will pay to its bearer the principal sum of 100 gulden (Austrian value), in accordance with conditions set forth on the back of the instrument, together with one-fifth part of any such sum as may be allotted to the prize number of the bond, and which sum must amount to at least 120 gulden, Austrian value, with interest semi-annually on the bond

until the same is drawn, at the rate of five per cent. per .annum, to the bearer of the coupons thereunto attached. By the rules and regulations concerning the drawing and redemption of these bonds, indorsed on the instrument in question, it is in substance provided that the bonds issued on the loan of March 15, 1860, are divided into 20,000 equal series, and each series to the amount of 10,000 gulden is subdivided into twenty numbers, marked from one to twenty. Each of the bonds contains in its left heading the number of the series, and on its right its prize number. The drawing of the series numbers it is provided shall take place on the first days of February and August in each year. That of the prize numbers on the first day of May and the second day of November in each year. For the purpose of the drawing of the series 20,000 numbers are deposited in a wheel, from which the fixed number of series to be redeemed for the half year is drawn. The series numbers so drawn are then deposited in a second wheel, to await the next drawing of the prize numbers. On the day when the drawing of the prize numbers takes place twenty numbers, from one to twenty, are deposited in a separate wheel, whereupon the wheel wherein the series numbers are deposited is unlocked and one number drawn therefrom. This number designates the series of the bond which is entitled to the highest prize. Thereupon a number from the wheel containing the twenty prize numbers is to be drawn, and this number designates the bond which is entitled to the highest prize. In this manner the drawings are to be continued until all the prizes above 600 gulden are exhausted. All other bonds, not redeemed with one of the larger prizes, receive the principal sum, and interest, and twenty per cent. in addition. At every drawing the following prizes are drawn; first, one of 300,000 gulden, one of 50,000 gulden, one of 25,000 gulden, two of 10,000 gulden, fifteen of 5,000 gulden, and thirty of 1,000 gulden. Drawn bonds are to be paid three months after the drawing. Under this scheme the holder of a bond receives in any event the face value thereof, with interest at five per cent. up to the date of the drawing, and a premium or prize of twenty per cent. He has also a chance to draw one of the higher prizes above named. The bond purchased by the plaintiff gave him the

absolute right to receive under the scheme of the loan the sum of 120 gulden and interest on 100 gulden at five per cent. per annum until the drawing of the bond, and a chance to draw a prize in money; which chance varied in possible value from 60,000 gulden down to 200 gulden. The question in the case is whether this constitutes a prohibited lottery within the Revised Statutes of this State. The learned referee was of opinion that it did not, because the holder of the bond is in any event to receive its par value and interest and a premium of twenty per cent., without regard to the question whether or not he drew one of the larger prizes.

The language of our statute is "no person shall set up or propose any money, goods, chattels or things in action to be raffled for, or to be distributed by lot or chance to any person who shall have paid or contracted to pay any valuable consideration for the chance of obtaining such money, goods or things in action." (1 R. S., 665, § 22; 2 R. S., 6 ed., 922, § 47.) What is forbidden by this section, so far as it is applicable to the case before us, is that no person shall set up or propose any money to be distributed by lot or chance to any person who shall have paid or contracted to pay any valuable consideration for the chance of obtaining such money. It cannot be doubted that this bond of the Austrian government does propose money to be so distributed to any holder of the bond. Nor can it be questioned that the purchaser does pay a valuable consideration for the chance of obtaining a share of the money thus to be distributed. He gets such chance in addition to what may be the full value of the money which he pays. But it is very clear that he purchases and pays for the chance of obtaining a large sum of money, as well as for the much smaller amount which the bond absolutely secures to him. The chance is offered as an inducement to the purchase of the bond, and there seems to be no reason whatever to doubt that if in any exigency the State of New York should adopt such a scheme for the purpose of inducing the sale of its bonds, the plan would be a palpable violation of the provisions of the Constitution forbidding lotteries.

Under this scheme the Austrian government offers not only to refund the loan with interest, but to pay an absolute fixed premium on every bond, in excess of principal and interest. So far the

scheme contains no elements of a lottery, and if it could be severed from the other provisions of the bond it would be perfectly lawful and valid. But in order to induce the prompt purchase of bonds which promise principal, interest and premium, it gives to every purchaser a chance in a lottery which forms a part of the plan of the loan, and is obviously intended to bring into operation, in order to facilitate the placing of the loan, every vicious principle which our statute and Constitution were intended to restrain and prohibit. Such a lottery acquires no validity under our laws, because it is connected with a loan either foreign or domestic. All the evils that attend ordinary lotteries are present in this scheme; and, indeed, are enhanced by the fact that the speculative spirit which leads men to invest in lotteries is largely encouraged by the absolute security against any actual loss. It is a great incentive to gamble for a prize, to know that nothing can be lost. To get the chance of a fortune in this form, many purchasers would be induced by the absolute character of the obligation so far as respects the face value, interest, and twenty per cent. premium promised by the bond, to purchase the bonds, who would otherwise not invest in them at all. This serious vice would be plainly seen if any person in this State in desperate straits, should set on foot a precisely analogous scheme and put his bonds or paper into the market, promising precisely the same absolute payment, and offering precisely the same chances for drawing large sums of money to the lucky few who should happen to hold the prize numbers to be drawn. And if such a scheme would be a lottery prohibited by our statute, when set on foot by any such person or persons, it must be so when set on foot by any corporation or government. Our statute has no extra-territorial effect to prevent other States or foreign governments from establishing lotteries as a part of their system of effecting loans. But it has full territorial effect to prevent the sale in our State of the evidences of loans which embody such lotteries. Otherwise it would operate only to prevent domestic lotteries; and thus would deprive ourselves of whatever benefits might possibly attend schemes of this character, and expose the citizens of this State to all the evils of foreign lotteries, while suffering other States or countries to enjoy such possible benefits. Hence the prohibition contained

in the statute above quoted extends to every act or effort to set on foot a distribution of money by lot or chance within this State, by the sale of any ticket, certificate, paper or instrument, share or interest in any foreign lottery which would be illegal if sought to be established in this State. These principles, we think, are substantially settled by the decisions of the Court of Appeals and other courts, cited by the respective counsel on the argument. (*Governors of the Almshouse* v. *Art Union*, 7 N. Y., 228 ; *Negley* v. *Devlin*, 12 Abb. Pr., N. S., 210 ; *Hull* v. *Ruggles*, 56 N. Y., 424.) *Negley* v. *Devlin* was a case of a concert gift lottery set on foot in Washington, in the District of Columbia. It was, therefore, a foreign lottery in the same sense, so far as the power of our laws is concerned, as the lottery involved in the Austrian loan.

There is nothing in the suggestion of the learned counsel for the respondent that the statute of this State, because it virtually deprives the Austrian government of the privilege of disposing of its bonds in this market, is in conflict with the international comity existing between the United States and the Austrian government, and is therefore inoperative and void. Neither that government nor any other can enter into the markets of our State with any scheme for raising money by loan, which is in violation of our statutes. No international comity permits or tolerates financial transactions for the benefit of foreign powers which are forbidden by express statutes to our own citizens ; and whenever they so seek to effect loans in our markets and of our citizens, their modes must not be in conflict with our Constitution, or statutes for the prevention of offenses against public morals.

The judgment must be reversed and a new trial ordered, with costs to abide event.

Barrett, J., concurred.

Present—Davis, P. J., and Barrett, J.

Judgment reversed, new trial ordered, costs to abide event.